FILED
SUPERIOR COURT
OF GUAM

2024 APR -3 PM 3: 36

CLERK OF COURT

BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| PEOPLE OF GUAM | **Criminal Case No. CF0428-23** |
| | Police Report No. 23-15800/23-15804/23-15805 |
| vs. | |
| **JOSEPH QUICHOCHO TAIMANGLO, II,** (aka Joseph Quichocho Taimanglo; aka Baby Joe; aka Joseph Quintanilla Taimanglo.II) Defendant. | **DECISION AND ORDER** (Motion to Suppress Evidence) |

## INTRODUCTION

This matter came before the Honorable Alberto E. Tolentino on October 26, 2023, for an evidentiary hearing on Joseph Quichocho Taimanglo, II's ("Defendant") Motion to Suppress Evidence (Sept. 26, 2023). Defendant was represented by Assistant Alternate Public Defender Tyler Scott. Assistant Attorney General Kristine B. Borja appeared for the People of Guam ("People"). Having duly considered the parties' briefing and oral arguments, witness testimony, and applicable law, the Court hereby **GRANTS** Defendant's Motion to Suppress.

## BACKGROUND

Defendant has been indicted for Possession of a Schedule II Controlled Substance (as a Third Degree Felony) under 9 GCA § 67.401.2(a) and (b). On September 26, 2023, Defendant filed a Motion to Suppress Evidence. Defendant argues that a warrantless search inside the cover of his cell phone, which led to the discovery of the alleged controlled substance, violated the Fourth Amendment to the United States Constitution. Mot. Suppress (Sept. 26, 2023). The People filed an Opposition, arguing either the Fourth Amendment did not apply to these facts or else that an exception to the Fourth Amendment did apply. Opp. Mot. Suppress (Oct. 12, 2023). On October

1

26, 2023, the Court heard the motion, received testimony from Guam Police Department ("GPD") Officers Ibanez and Skilling, and thereafter took the matter under advisement.

## FINDINGS OF FACT

By a preponderance of the evidence, the Court makes the following findings of fact:

1. On June 23, 2023, GPD officers were alerted about a white sedan in Dededo was refusing to submit to a traffic stop. Digital Recording at 2:53:00 PM (Mot. Hr'g, Oct. 26, 2023); *id.* at 3:28:55 PM.

2. Officer Ibanez heard this alert and drove his patrol car to the location described. *Id.* at 2:53:47 PM. Officer Skilling, in a separate vehicle, did the same. *Id.* at 3:29:03 PM.

3. Officers Ibanez and Skilling located the white sedan and joined the pursuit. *Id.* at 2:53:47 PM; *id.* at 3:30:17 PM.

4. Near the front gate of Andersen Air Force Base, the white sedan crashed. Officer Skilling testified that he saw the white sedan crash into the base of a utility pole and briefly go airborne. *Id.* at 3:31:37 PM.

5. Officer Skilling observed a male individual exit the passenger side of the vehicle and begin to run towards Andersen Air Force Base. *Id.* at 3:32:27 PM. Both Officer Ibanez and Officer Skilling, in their respective testimony, identified Defendant as this individual. *Id.* at 3:04:08 PM; *id.* at 3:33:30 PM.

6. Officer Skilling chased Defendant on foot and managed to apprehend and detain him. *Id.* at 3:32:47 PM.

7. Meanwhile, Officer Ibanez began to investigate the scene of the crash. Outside of the white sedan, on the passenger side of the vehicles, he found two cell phones—one with a cover on it. *Id.* at 3:02:09 PM.[1]

8. Officer Ibanez decided to remove the cover from the cell phone. He did so because in his experience, individuals sometimes leave their ID or bank cards inside the case of their cell phone. *Id.* at 3:02:53 PM.

9. Officer Ibanez testified that whenever he is investigating a potential crime scene, he "conducts an inventory" and collects the personal property he finds. *Id.* at 3:05:00 PM.

10. Officer Ibanez testified that this practice is pursuant to established GPD policy, which allows officers to confiscate items either for "safekeeping or evidence." *Id.* at 3:05:50 PM.

11. No written versions of the purported GPD policy (or policies) in question have been brought before the Court.

12. Immediately after Officer Ibanez began to remove the cell phone's cover, Officer Skilling appeared nearby, escorting Defendant to one of the patrol cars. *Id.* at 3:03:10 PM.

13. When Defendant saw Officer Ibanez holding the cell phone with the cover on it, Defendant stated something like "yeah, that's my cell phone." *Id.* at 3:04:32 PM.

14. At this exact moment, according to the testimonies of Officer Skilling and Officer Ibanez, neither officer believed they had probable cause to make an arrest on Defendant. *Id.* at 3:39:39 PM; *id.* at 3:17:31 PM.

15. Officer Ibanez nonetheless opened the cell phone case and found a "small clear resealable baggie" containing suspected methamphetamine. *Id.* at 3:10:09 PM.

16. Officer Ibanez performed a field test on the substance and it yielded a "presumptive positive" result for methamphetamine. *Id.*

17. Officer Ibanez informed Officer Skilling of the "presumptive positive" result. Officer Skilling then effectuated an arrest of Defendant. *Id.* at 3:10:24 PM.

18. Officer Skilling testified that his probable cause for this arrest was the discovery of the alleged methamphetamine, not anything that happened prior to that. *Id.* at 3:35:37 PM; *id.* at 3:39:57 PM.

## DISCUSSION

Defendant argues that the Fourth Amendment protects him against Officer Ibanez's search of his cell phone, and thus the discovery of the alleged methamphetamine. The People make two arguments in response: first, that Defendant had no Fourth Amendment-protected privacy interest in the cell phone because he had abandoned it; and second, that even if the Fourth Amendment generally applies to these facts, Officer Ibanez's search of the phone meets the "inventory search" exception to Fourth Amendment protection.

The Fourth Amendment protects against unreasonable searches and seizures and is made applicable to Guam via section 1421b(c) of the Organic Act of Guam. *See, e.g., People v. Camacho*, 2023 Guam 9 ¶ 14. "To pass muster under the Fourth Amendment, searches and seizures must be reasonable under the circumstance." *Id.* (citing *Whren v. United States*, 517 U.S.

806, 810 (1996). Thus, the "touchstone" of Fourth Amendment analysis is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Id.* (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977)).

It is undisputed that Officer Ibanez did not have a warrant for his search. "Warrantless searches and seizures are per se unreasonable, subject to a few specifically established and well-delineated exceptions." *Camacho*, 2023 Guam 9 ¶ 15 (citing *People v. Cundiff*, 2006 Guam 12 ¶ 26). When a warrantless search occurs, "the People bear the burden of the proof" that the search did not violate the Fourth Amendment. *People v. Calhoun*, 2014 Guam 26 ¶ 9; *see also People v. Superior Court*, 496 P.2d 1205, 1210 (Cal. 1972).

**A. The evidence does not establish that Defendant "abandoned" his cell-phone**

The Fourth Amendment applies where an individual has a legitimate expectation of privacy. Generally, an individual has a "legitimate expectation of privacy" in his or her cell phone, even when it is not in his or her immediate possession. *See, e.g., State v. Peoples*, 378 P.3d 421, 425 (Ariz. 2016). However, the Fourth Amendment generally *does not* apply to "what a person knowingly exposes to the public." *Katz v. United States*, 389 U.S. 347, 351 (1967). Accordingly, the Fourth Amendment does not protect a defendant against a search of his or her "abandoned" property. *See, e.g., United States v. Soto-Beniquez*, 356 F.3d 1, 36 (1st Cir. 2003) ("It is well settled that if a defendant abandons property while he is being pursued by police officers, he forfeits any reasonable expectation of privacy he may have had in that property."); *United States v. Edwards*, 34 F.4th 570, 583 (7th Cir. 2022); *United States v. Stephens*, 206 F.3d 914, 917 (9th Cir. 2000); *see also State v. Hamilton*, 67 P.3d 871, 875 (Mont. 2003) ("when a person intentionally abandons her property, that person's expectation of privacy with regard to that property is abandoned as well.").

4

Determining whether an object has been abandoned is primarily "a question of intent," as an abandonment "must be voluntary." *Stephens*, 206 F.3d at 917 (first quoting *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986), then quoting *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995)). Federal courts have reached different conclusions on the burden of proof necessary to prove abandonment. *Compare Friedman v. United States*, 347 F.2d 697, 705 (8th Cir. 1965) ("Proof of abandonment must be made by the one asserting it by <u>clear, unequivocal and decisive evidence</u>") *with United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003) ("To demonstrate abandonment, the government must prove <u>by a preponderance of the evidence</u> that the defendant's voluntary words or actions would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item to be searched."). In any case, when a court assesses abandonment,

> the inquiry should focus on whether, through words, acts or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search or seizure. This determination is to be made in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of the property.

*Nordling*, 804 F.2d at 1469 (citations omitted).

It is not clear to the Court that Defendant intended to abandon his cell phone. With respect to the first "important factor" under *Nordling*, the facts indicate that Defendant never denied ownership of the cell phone. Officer Ibanez testified that Defendant immediately admitted that the cell phone in question was his, and Officer Skilling testified that when Defendant was questioned at the Dededo Precinct, he reaffirmed his ownership. This weighs against a finding of intentional abandonment.

With respect to the second "important factor," the facts do not clearly establish that Defendant *intentionally* relinquished his cell phone. Neither Officer Ibanez nor Officer Skilling testified that they saw Defendant drop, throw, or otherwise intentionally give up control of the phone. And while in some cases it may reasonable to assume a cell phone could only be away from a person's body by a voluntary act, the facts here show that Defendant had just been involved in a serious car crash. The testimony of the officers indicates that in the crash, the vehicle veered out of control, went "airborne," and did two "360 spins." Digital Recording at 3:32:06 PM (Mot. Hr'g, Oct. 26, 2023). The cell phone was then found very near to the crash site. Under these circumstances, the cell phone could have been inadvertently ejected from the vehicle during the crash, or inadvertently lost as Defendant exited from the vehicle.

While it is unclear to the Court whether abandonment must be proved by clear and convincing evidence or only by a preponderance of the evidence, the Court finds that the People's evidence here meets neither standard. Instead, on the evidence before the Court, it is at least as likely that Defendant inadvertently lost his cell phone during or immediately after the car crash as that he intentionally abandoned it before fleeing from police. As "a person may not abandon property for Fourth Amendment purposes by mere loss, carelessness, or accident," *United States v. Sparks*, 806 F.3d 1323, 1353 (11th Cir. 2015) (Martin, C.J., dissenting), the Court holds that Defendant did not abandon his cell phone for Fourth Amendment purposes.

**B. The evidence establishes that the search was pursuant to an "inventory search"**

The People argue that even if the Fourth Amendment applies here, Officer Ibanez's search of the cell phone was pursuant to a standardized GPD practice of collecting inventory from the site of car crashes, which meets the "inventory search" exception to the Fourth Amendment. *See* Opp. Mot. Suppress at 3. Although it appears the Guam Supreme Court has not yet confronted the "inventory search" exception to the Fourth Amendment, it has been recognized by the U.S.

6

Supreme Court. *See, e.g., Florida v. Wells*, 495 U.S. 1 (1990); *Colorado v. Bertine*, 479 U.S. 367 (1987); *Illinois v. Lafayette*, 462 U.S. 640 (1983); *South Dakota v. Opperman*, 428 U.S. 364 (1976).

"An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren*, 517 U.S. at 811 n.1. Because police officers have "community caretaking functions," courts have approved "police caretaking activities resulting in the securing of property within the officer's plain view." *Opperman*, 428 U.S. at 368, 371. However, this does not mean that all inventory searches are constitutionally permissible. An inventory search must be "conducted in good-faith according to standardized criteria, such as a police-department uniform inventory search policy, and this criterion must curtail the discretion of the searching officer so as to prevent searches from becoming a ruse for a general rummaging in order to discover incriminating evidence." *United States v. Stitt*, 382 Fed. Appx. 253, 255 (4th Cir. 2010) (citations omitted); *see also Bertine*, 479 U.S. at 374 n.6 ("Our decisions have always adhered to the requirement that inventories be conducted according to standardized criteria.").

The People's Opposition argument cites exclusively to *Florida v. Wells*, 495 U.S. 1 (1990). However, in *Wells*—and in nearly all cases the Court has found on this topic[2]—the inventory search occurred only *after* the defendant was arrested. 495 U.S. at 2. Here, by contrast, all parties agree Defendant was not under arrest at the time of the cell phone search, but only temporarily detained.[3] Both officers testified that they did not have probable cause to arrest Defendant at the time the search began. The People have not explained whether or how this affects the validity of the inventory search exception they seek to apply.

The primary value of the *Wells* case is in demonstrating that an inventory search must be conducted pursuant to a valid departmental policy. Drawing on prior cases, the *Wells* court

7

explained that "standardized criteria, or established routine, must regulate the opening of containers found during inventory searches." 495 U.S. at 4 (citations omitted). Applying that policy, the *Wells* court concluded:

the Supreme Court of Florida found that the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search. We hold that absent such a policy, the instant search was not sufficiently regulated to satisfy the Fourth Amendment and that the marijuana which was found in the suitcase, therefore, was properly suppressed by the Supreme Court of Florida.

*Id.* at 4-5.

Here, Officer Ibanez testified that his search of the phone was pursuant to GPD policy. However, no written version of that policy was presented to the Court, and the testimony suggested that this policy is extremely broad in scope.[4] The Court finds this analogous to the circumstance described by the Fourth Circuit in *United States v. Young*,

To be sure, [the officer] explained her reason for conducting an inventory search, testifying that the car was searched '[b]ecause it was being towed and that way [the police] were not responsible for anything left in [the] vehicle.' And that testimony, presumably, was the basis for the district court's finding that the search was conducted in good faith. But it does not describe nor even refer expressly to any [department] policy, or to any standard procedures or criteria that the department requires officers to observe in carrying out inventory searches. And without that, we cannot assess whether the search in this case 'conforms to our precedent' requiring such standardized criteria, and we cannot determine whether the searching officers'

discretion was 'sufficiently limit[ed]' by that criteria to bring it within the inventory search exception.

751 Fed. Appx. 381 (4th Cir. 2018) (first quoting *United States v. Bullette*, 854 F.3d 261 (4th Cir. 2017), then quoting *United States v. Matthews*, 591 F.3d 230 (4th Cir. 2009)). Likewise, the Court here does not have sufficient evidence to determine whether there are appropriate safeguards on the GPD policy that apparently authorized this search. And where such safeguards cannot be ascertained, the inventory search cannot be upheld as an exception to the Fourth Amendment. *See Wells*, 495 U.S. at 4-5.

## CONCLUSION

The Court does not doubt that the search of the cell phone was done in good faith and for the sole purpose of generating an inventory. However, it was a warrantless search within the protections of the Fourth Amendment. The Court is reluctant to apply an exception to the Fourth Amendment, not previously recognized by the Supreme Court of Guam, without either persuasive case law supporting the application or at least a clear presentation of GPD's inventory search policy. Accordingly, the Court concludes that the People have not borne their burden of proving this warrantless search was "reasonable" under the Fourth Amendment. *See Calhoun*, 2014 Guam 26 ¶ 9. Because the search was unreasonable, the evidence obtained from that search must be suppressed. Defendant's motion is **GRANTED.**

**SO ORDERED** *nunc pro tunc* January 24, 2024: __APR 0 3 2024__ .

**HONORABLE ALBERTO E. TOLENTINO**
Judge, Superior Court of Guam

SERVICE VIA EMAIL
I acknowledge that an electronic
copy of the original was e-mailed to:

AG; APD

Date: 4|3|24 Time: 3:40
cawlerio (a)

Deputy Clerk, Superior Court of Guam